Maxine DAKIL, Individually and as Executrix of the Estate of Louis N. Dakil, Deceased, Plaintiff-Appellant and Cross-Appellee,

v.

UNITED STATES of America, Defendant-Appellee and Cross-Appellant.

Nos. 73–1607 and 73–1608.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 24, 1974.

Decided May 6, 1974.

## 432

James K. Peden, III, Dallas, Tex. (Royal H. Brin, Jr., and Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., of counsel, on the brief), for plaintiff-appellant and cross-appellee.

Robert S. Watkins, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, and Richard A. Pyle, U. S. Atty., of counsel, on the brief), for defendant-appellee and cross-appellant.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Dr. Louis N. Dakil and his wife Maxine sued for a refund of federal income taxes and the government counterclaimed for additional taxes and fraud penalties. Dr. Dakil died during pendency of the suit and his wife was named executrix of his estate. The case was tried to a jury and on the basis of its answers to special interrogatories the court entered judgment against the executrix in the amount of $28,386.04 ($17,574.11 as taxes and $10,811.93 as penalties). The court rejected the request of the government for judgment against Maxine Dakil individually for the unpaid taxes. Both the government and the executrix have appealed. We affirm.

No good purpose would be served by discussing the evidence. The record shows that the taxes in question were due and unpaid and that the evidence of fraud is clear and convincing. The executrix puts prime reliance on claimed errors in the instructions. The government's reconstruction of Dr. Dakil's income and deductible expenses was complex and was summarized in charts which were received in evidence. The executrix adduced no evidence of any consequence to dispute the testimony of the government witnesses or the accuracy of the underlying documents. The court instructed the jury that the figures shown on the summaries must be accepted as true. The failure of the executrix to present any evidence worthy of consideration to controvert the evidence of the government entitled the government to a directed verdict on the question of Dr. Dakil's tax liability. If there was any error in the instruction, the executrix was not prejudiced. Wonnacott v. Denver & Rio Grande Western R. Co., 10 Cir., 187 F.2d 607, 608, and Rule 61, F.R.Civ.P. This is not a case like George v. Commissioner of Internal Revenue, 1 Cir., 338 F.2d 221, 223, where a substantial item entering into the calculation of a taxpayer's gross income depended on a presumption of correctness of the government's calculations.

The executrix objects to the instruction that "[a] consistent and substantial understatement of income is by itself strong evidence of fraud." An essentially comparable instruction was upheld in United States v. Thompson, 10 Cir., 279 F.2d 165, 169–170. The combined effect of the instructions given in Thompson, and here, was to tell the jury that continued failure to report income is to be considered only with all the other evidence in the case in determining the issue of fraud. Ibid. The instruction was not prejudicial. See also Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150, and Browne v. Commissioner of Internal Revenue, 4 Cir., 367 F.2d 386, 387.

We find nothing wrong with the instruction that a false statement in a return may be fraudulent if made without any knowledge of its truth or falsity. The instructions have to be considered as a whole. The court told the jury that inadvertence, mistake or oversight did not suffice to establish fraud, and that fraud must be established by clear and convincing evidence of deliberate acts intended to evade income tax liabili-

ty. One of the special interrogatories submitted to the jury specifically required that to establish fraud the questioned returns must have been filed with intent to evade income tax liability. Our decision in United States v. Thompson, 279 F.2d at 169–170, is dispositive of the issue. We reject all objections to the instructions. The government was entitled to judgment against the executrix for the unpaid tax and fraud penalties.

■ The appeal of the government presents the question of the individual liability of Mrs. Dakil for the unpaid taxes. Section 6013(e)(1) of the Code relieves a spouse of liability under certain conditions, only one of which is pertinent here. Subsection (1)(C) provides for relief from liability if (1) the spouse claiming relief did not significantly benefit "directly or indirectly from the items omitted from gross income" and (2) "taking into account all other facts and circumstances, it is inequitable" to impose liability. As we read the statute, significant benefit is not determinative if all other facts and circumstances make the imposition of the tax inequitable.

The Senate Report on the bill which became § 6013(e) says that a finding of benefit to the spouse is insufficient to deny relief from tax liability, that the benefit must be "significant" and that "taking into account all other facts and circumstances," it is not "inequitable to hold the other spouse liable for the deficiency in tax * * *." S.Rep.No.91–1537, 91st Cong.2d Sess., 3 U.S.Code Cong. & Admin.News, '70 pp. 6089, 6092.

The interrogatory to the jury presented only the question of whether Mrs. Dakil did "significantly benefit" from the understatement of income in her husband's returns. The jury answered this adversely to Mrs. Dakil. The question of equity was not presented to the jury. The trial court held that the evidence was insufficient to sustain the jury's answer and did not say whether it based its ruling on significant benefit or equity.

To sustain its claim of significant benefit the government relies on luxurious lifestyle and joint ownership of property. As to the latter, nothing shows that Mrs. Dakil ever received anything as the result of that ownership. She accumulated no cash during the years in question. As to the former, the record does not disclose what would be luxurious lifestyle and what would be ordinary support for a doctor's wife in McAlester, Oklahoma, the home of the Dakils. The government points to the ownership of three cars of indeterminate value, a country club membership which was little used, vacation trips, private schools for the children, and house remodeling. The money spent on these activities is not disclosed.

The government blithely ignores the § 6013(e) provision relieving a spouse of liability if it would be inequitable to impose that liability. Mrs. Dakil testified that she was a housewife, that since the doctor's death she received $207 a month Social Security benefits, that she was a part-time "out reach" worker with senior citizens for which she received $1.60 per hour, and that the beneficiaries of the doctor's life insurance were the children.

■ We are not convinced that the benefits to Mrs. Dakil were significant. Even if they were, the overwhelming equitable considerations require that the unnecessarily harsh attempt to collect from her individually the tax liabilities of her husband should never have been made, and, having been made, should be cast into oblivion. Even a tax collector should have some heart.

On each appeal the judgment is affirmed.